THE COMMISSIONERS OF THE NEW ORLEANS IMPROVEMENT AND BANK-
ING COMPANY *v.* THE CITIZENS BANK OF LOUISIANA and others.

The agreement entered into by the Presidents of certain banks in New Orleans, on
the 18th of August, 1841, for the purpose of guarantying the circulation of the
banks represented by them, by which they bound themselves to contribute, in
proportion to the circulation of each bank, as authorised by a resolution of the
Presidents of the 6th April, 1840, for the relief of any one of the number which
might be unable to pay or secure the checks drawn on it for the weekly balances,
was founded on a good consideration, and is obligatory. The resolution created
a several, not a joint obligation, each bank agreeing to contribute in the ratio of
its circulation to that of the circulation of all the banks.

A joint obligation is created where several persons join in the same contract, to do
the same thing (C. C. 2075), but a several obligation when what is promised by
one of its obligors is not promised by the others, but each promises separately for
himself to do a distinct thing. Such obligations, though contained in the same
act, are as distinct, as if in different acts, made at different times. Ib. 2073.

A bank in liquidation under the act of 14th of March, 1842, cannot be sued before
any other court than that under the direction of which it is being liquidated.
Sec. 8.

. APPEAL from the Parish Court of New Orleans, *Maurian,* J.

BULLARD, J. This is an action by the Commissioners ap-
pointed for the liquidation of the Improvement Bank against
the other banks of this city, to recover from each its share of a
check of upwards of ninety thousand dollars, drawn in favor
of the Improvement Bank upon the Exchange Bank, by the
settling clerk, under the authority of the league of bank Presi-
dents. The plaintiffs allege that the several banks guaranteed
the payment of said check, and became liable to pay in default
of the debtor bank, in proportion to the circulation allowed to
each bank, according to the scale established by the banks
themselves, through the agency of their Presidents. The Parish
Court dismissed the action as to such of the defendant institu-
tions as were in liquidation, and gave judgment against the
others, each for its virile share, in proportion to the number
of banks which were parties to the contract; and two of the
defendants, to wit, the City Bank, and the Carrollton Bank have
appealed. The plaintiffs also appealed.

Our learned brother of the Parish Court has facetiously called

the check, upon which this action is brought, the *caput mortuum* of the bank's chemical operations. It appears to have been the last check drawn by the secretary appointed by the presidents, for the purpose of adjusting balances, and giving checks on the debtor in favor of the creditor banks; and his testimony shows that a great number had been previously drawn, and that there was not a single bank in favor of which, and on which such checks had not been drawn and paid. They were always admitted by all the banks.

The resolution of the bank Presidents of the 18th of August 1841, which the plaintiffs allege as the basis of the liabilities of the defendants, respectively declares, that "the contribution to be made for any bank that may be unable to pay, or satisfactorily secure the check of the secretary for balances, shall be in proportion to the circulation authorized by the resolution of the 6th of April, 1840," (which was fixed with referrence to the available means of the banks,) "and not in proportion to their respective capitals."

It is contended by the counsel for the defendants that this resolution is not binding on the banks; but we concur with the Parish Court in the opinion, that the evidence sufficiently shews the acquiescence of the banks, and that it became obligatory on such as assented to it. The league of bank Presidents grew out of the disordered condition of the currency, and the general suspension of specie payments. Each bank was interested in maintaining the circulation of all the others; and all had an interest in prompt payment of balances by such of the banks as should fall in arrears. The public looked to the agreement among the banks, by which the circulation of each was to a certain extent guarantied, as its ultimate security; and the banks held out to the public, as the motive of their combination, the protection of the great interests of commerce and agriculture. The appellants certainly acquiesced in and acted under that system, and with reference to the resolution of the 18th of August, 1841.

But, we think, that resolution did not create a joint obligation. Each bank was at liberty to withdraw from the combination after each settling day; and the guarantee was not each

for a fourteenth or a fifteenth according to the number of the banks, but it varied according to its circulation. The obligations contracted were, therefore, several, and not *joint*. Each bank agreed to contribute for any one bank not able to pay, or secure a balance found due on settlement, in the ratio which its circulation bore to the circulation of all the banks. The circulation of all the banks by the resolution of April 6th, 1840, was $9,500,000; consquently, the proportion of the Carrollton Bank would be as $300,000, and that of the City Bank as $750,000 to that aggregate, which would make the Carrollton Bank liable only for 3-95ths, or about one thirtieth of the amount, and the City Bank for 75-950ths. The Code defines a joint obligation to be where several persons join in the same contract to do *the same thing*; but several obligations are produced, when what is promised by one of the obligors is not promised by the other, but each one promises separately for himself to do a distinct act. Such obligations, although they may be contained in the same act, are considered as much individual and distinct, as if they had been in different contracts, and made at different times. Civil Code, arts. 2073, 2075.

It follows from these principles, that the court did not err in proceeding to judgment against a part only of the original defendants, after sustaining the exception to its jurisdiction, as to those which were in the progress of liquidation under the statutes of 1842. But the court, in our opinion, did err in condemning each to pay its virile share according to the number of banks, instead of adjusting the amount of liability in proportion to the circulation of each, as settled among themselves. We do not see upon what ground the banks can now repudiate that contract. It was founded on a consideration of mutual support, and with a view of sustaining the circulation, which was common to them all, in the confidence of the public. It is true, the President of the bank, now plaintiff, voted against that resolution; but it is equally clear from the evidence, that he yielded to the will of the majority, and acted under it in receiving the large amount of Exchange bank notes, which must have been forced into circulation by the other Institutions, and equity forbids that she should be the only loser.

No specific agreement as to interest is shown, and we think it should have been allowed from the day of protest, and not from the date of the check.

The judgment of the Parish Court, so far as it concerns the Carrollton and City Banks, is, therefore reversed; and it is adjudged and decreed, that the plaintiffs recover of the Carrollton Bank, the sum $3171 23, with interest at five per cent, from the 19th of February, 1842; and of the City Bank, $7928 13, with like interest until paid, and the costs of both courts; the costs of appeal, as to the Carrollton Bank only, to be paid by the plaintiffs.

*Barker, Peyton* and *I. W. Smith,* for the plaintiffs.
*Micou* and *T. Slidell,* contrâ.

---

## SAME CASE—ON A RE-HEARING.

BULLARD, J.　A re-hearing was allowed the plaintiffs, on the suggestion that we had overlooked a resolution, which provided that the checks drawn by the secretary on the debtor, in favor of the creditor banks, should bear interest at six per cent from date.　Such an agreement has since been pointed out to us, and the judgment is to be corrected accordingly.

We are not dissatisfied with our former judgment upon the merits, so far as it relates to the liability of the banks under the resolutions of the Board of Presidents.　With respect to the right of any of the defendants to discharge themselves, by an offset of debts due by the plaintiffs, it is a question not raised by the pleadings.

It is, therefore, ordered, that in lieu of five per cent interest, the plaintiffs recover at the rate of six per cent from the date of the check; and that, in all other respects, the judgment first pronounced, remain undisturbed.